# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

CARROLL TUTON,

    Plaintiff,

vs.                                                                                                                                                    No. CIV 98-1497 JC/JHG

CITY OF LAS CRUCES, et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed March 15, 2000 *(Doc. 89)*. Defendants request that the Court grant summary judgment as to Plaintiff's remaining claims for equal protection, intentional infliction of emotional distress, and constructive discharge.[1]

**I.**     **Background**

Plaintiff was a driver for the Las Cruces Fire Department. Plaintiff's chief complaint is that co-workers made derogatory comments about him regarding his sexual orientation even though he is married and has five children. Plaintiff further alleges that powerful officials harbored a malignant animosity toward him and so violated his right to equal protection by treating him differently from other firefighters. As a result of this treatment, Plaintiff alleges intentional inflection of emotional distress. Additionally, Plaintiff claims that because the other firefighters mistreated and maligned him, his resignation from the fire department constituted a constructive discharge.

---

[1] Plaintiff has abandoned his claims for defamation against the individual Defendants and violation of the Americans with Disabilities Act. In addition, the Court dismissed Plaintiff's claim for retaliation.

## II. Standard for Summary Judgment

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED. R. CIV. P. 1). Under FED. R. CIV. P. 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law. *Thrasher v. B & B Chemical Co., Inc.*, 2 F.3d 995, 996 (10th Cir. 1993). The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id*. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## III. Discussion

### A. Equal Protection Claim

Plaintiff brings the equal protection claim against all Defendants. He bases this claim on the "class of one" type of equal protection claim where "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him. . . ." *Esmail v. Macrane*, 53 F.3d 176, 179 (7th Cir. 1995). Defendants argue that summary judgment is appropriate because Plaintiff was not the victim of actions taken by a "powerful" government official and Plaintiff was not singled out for vindictive mistreatment.

Defendants further argue that the individual Defendants are entitled to qualified immunity on the equal protection claim.

The parties appear to agree that Plaintiff's co-workers are not "powerful" government officials for purposes of the "class of one" equal protection claim. Plaintiff contends, however, that Defendant Fire Chief Roman should be considered a powerful government official who violated Plaintiff's right to equal protection by condoning the vindictiveness of Plaintiff's immediate supervisors and the other firefighters toward Plaintiff. Although Plaintiff admits that Chief Roman did not personally make any derogatory remarks towards him, Plaintiff points to an affidavit by Lieutenant Raymond Garcia, one of Plaintiff's supervisors, in which Lt. Garcia states that Chief Roman told him with respect to some labor charges concerning Plaintiff that, "I'm really pissed off at this guy, and I'll show him." Pl.'s Ex. 3 at ¶ 1 (attached to Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. (Served Feb. 1, 2000) (Response), filed March 15, 2000 *(Doc. 91)*). Lt. Garcia also stated in his affidavit that he "felt pressured by management [i.e., Chief Roman] to give Tuton unfair evaluations and treatment." *Id.* at ¶ 4. The only other evidence of malignant animosity by Chief Roman is Plaintiff's declaration that Chief Roman glared at him at a meeting as though he wanted to attack Plaintiff. Pl.'s Ex. 1 at ¶ 74 (attached to Response).

Lt. Garcia elaborated on his affidavit during his deposition. At the deposition, Lt. Garcia testified that Chief Roman's statement in the affidavit of "I'll show him" was incomplete and should have more accurately been "I'll show him that we're right." Dep. of Lt. Garcia at 23-24 (attached to Defs.' Mem. in Support of Mot. for Summ. J. (Defendants' Memo), filed March 15, 2000 *(Doc. 90)*). Lt. Garcia further clarified at his deposition that he was not pressured to give Plaintiff unfair evaluations and treatment but only "felt" pressured to do so. Dep. of Lt. Garcia at 34 (attached to Defs.' Reply Mem. in Support of Their Mot. for Summ. J. (Reply), filed March 15, 2000

*(Doc. 92)*). Lt. Garcia went on to explain that he personally felt that monthly evaluations are unfair but was not sure if they were unfair with respect to Plaintiff. *Id*. at 33. Lt. Garcia acknowledged that sometimes management needs to have monthly evaluations performed. *Id.* In fact, Lt. Garcia believed that monthly evaluations were necessary for Plaintiff. *Id*. at 34. *See also* Dep. of Lt. Garcia at 14-16 (attached to Defendants' Memo) (Captain Randy Nix informed Lt. Garcia that monthly evaluations were established to help Plaintiff develop personally and were based on work performance issues). Lt. Garcia apparently also felt a time pressure to get the monthly evaluations done. Dep. of Lt. Garcia at 34-35 (attached to Reply). Lt. Garcia further noted that he did not give Plaintiff a lower evaluation than he really deserved. Dep. of Lt. Garcia at 59 (attached to Defendants' Memo). Examining the above-cited evidence as a whole, I cannot find that a rational trier of fact would find that Chief Roman harbored a "malignant animosity" against Plaintiff sufficient to establish a violation of the equal protection clause. *See LeClair v. Saunders*, 627 F.2d 606, 611 (2d Cir. 1980), *cert. denied*, 450 U.S. 959 (1981) ("where no invidious discrimination or interference with the exercise of other express constitutional rights has occurred, the malice/bad faith standard should be scrupulously met").

      Even if there was a genuine dispute over whether Chief Roman harbored a malignant animosity against Plaintiff, Defendants argue that Plaintiff must also show that he was "singled out" for vindictive mistreatment. In other words, Plaintiff must demonstrate that the fire department treated Plaintiff differently than other firefighters similarly situated. *Garcia v. State of New Mexico Office of the Treasurer*, 959 F. Supp. 1426, 1433 (D.N.M. 1997) (citations omitted). Defendants have presented evidence that Plaintiff was not treated differently from other fire truck drivers when he was not chosen as alternative lieutenant, performed maintenance on fire trucks, washed fire trucks, backed up a fire truck with spotters, denied a station transfer, had a thirty-minute time limit on family

visitations, had trouble with his paycheck calculations, received monthly evaluations, and was teased by co-workers. Statement of Undisputed Material Facts at ¶¶ 2, 4-7, 21-28 of Defendants' Memo. Plaintiff attempts to counter this evidence by indicating that Lts. Immonen and Casas testified in depositions that they did not hear any of the firefighters call Plaintiff sexually derogatory names and that Lt. Garcia testified that he heard only one such comment. *Id.* at ¶ 10. Just because three supervisors did not for the most part hear any firefighters calling Plaintiff names does not necessarily mean that such name calling does not occur with other firefighters. I, therefore, conclude that Defendants have satisfied their burden of demonstrating that there is no evidence that Plaintiff was treated any differently than other similarly situated firefighters. In sum, I find that summary judgment is appropriate on the equal protection claim. That being so, there is no need to address Defendants' qualified immunity defense.

### B. Intentional Infliction of Emotional Distress

Under New Mexico law, the Court must initially determine as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *Padwa v. Hadley*, 1999-NMCA-067, ¶ 9, 127 N.M. 416, *cert. denied*, No. 25,740 (1999) (citing *Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.), *cert. denied*, 101 N.M. 362, 683 P.2d 44 (1984)). Where reasonable minds may differ on that question a jury must decide whether the conduct at issue meets the requirements of the tort. *Id.* The court in *Padwa* stated that

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Id*. at ¶10 (quoting RESTATEMENT (SECOND) OF TORTS at § 46 cmt. d). The court in *Padwa* further explained that

> By characterizing conduct as 'atrocious and utterly intolerable' and 'beyond all possible bounds of decency,' the Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage. It recognizes that, as part of the price of personal liberty, a free and democratic society must tolerate certain offensive conduct as well as some obnoxious or morally deviant behavior. Accordingly, the mere fact than an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability.

*Id*. at ¶ 11. Caution, therefore, is the "watchword" when examining whether the tort of intentional infliction of emotional distress encompasses the facts of a case. *Id*. However, where there is sexual harassment and public humiliation, one is more likely to have a claim for intentional infliction of emotional distress. *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1466 (9th Cir. 1994), *cert. denied*, 513 U.S. 1082 (1995).

In this case, Plaintiff alleges that he has endured profanity, taunting, and improper conduct based on sexual orientation which occurred at the workplace and sometimes in front of co-employees. Although humiliating and embarrassing, I cannot find as a matter of law that this conduct by the individual Defendants meets the "heightened threshold of extreme and outrageous conduct." *Padwa*, 1999-NMCA-067 at ¶ 12. The conduct complained of cannot be considered to have gone "beyond all possible bounds of decency" or characterized as "atrocious, and utterly intolerable in a civilized community." Consequently, I find that summary judgment is appropriate on Plaintiff's claim of intentional infliction of emotional distress.

## C. Constructive Discharge[2]

In order to state a constructive discharge claim, a plaintiff must allege facts sufficient to demonstrate that the employer's discriminatory acts forced the employee to involuntarily resign. *See Yearous v. Niobrara County Memorial Hosp. by and through Bd. of Trustees*, 128 F.3d 1351, 1356 (10th Cir. 1997), *cert. denied*, 523 U.S. 1074 (1998) (quoting *Parker v. Board of Regents of Tulsa Jr. College*, 981 F.2d 1159, 1162 (10th Cir. 1992)); *Burks v. Oklahoma Pub. Co.*, 81 F.3d 975, 978 (10th Cir.), *cert. denied*, 519 U.S. 931 (1996). Such a situation arises "'when the totality of the circumstances indicate the employee did not have the opportunity to make a free choice.'" *Yearous*, 128 F.3d at 1356 (quoting *Parker*, 981 F.2d at 1162). In other words, "the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign." *Id*. (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992), *cert. denied,* 509 U.S. 923 (1993)). The plaintiff's subjective view of the employment environment is irrelevant. *Id*. (citing *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 172 (10th Cir. 1982)).

As Defendants point out, for Plaintiff to show constructive discharge, he must first demonstrate that Defendants' alleged harassment was discriminatory in nature. In this case, the gist of Plaintiff's complaint against Defendants is that other employees and some supervisors harassed him because they thought he was effeminate and gay. Although same-sex harassment can be actionable under Title VII, harassment based on sexual preference or orientation, however, is not. *See, e.g., Simonton v. Runyon*, 50 F. Supp.2d 159, 161-63 (E.D.N.Y. 1999). *See also Metzger v. Compass Group U.S.A., Inc.*, 1999 WL 714116 (D. Kan. 1999). That being so, I find as a matter of law that

---

[2] Although Plaintiff never amended his complaint to include a constructive discharge claim, that claim has been thoroughly explored in discovery and is listed in the Pretrial Order as a claim. Under these circumstances, I will allow the constructive discharge claim to stand for purposes of this summary judgment motion.

Plaintiff cannot allege a claim for constructive discharge. Summary judgment is, therefore, appropriate on that claim.

Wherefore,

IT IS ORDERED that Defendants' Motion for Summary Judgment, filed March 15, 2000 *(Doc. 89)*, is **granted** and that Plaintiff's claims for equal protection, infliction of intentional emotional distress, and constructive discharge are **dismissed** with prejudice.

IT IS FURTHER ORDERED that Plaintiff's abandoned claims for defamation against the individual Defendants and violation of the Americans with Disabilities Act are **dismissed** without prejudice.

DATED this 22nd day of May, 2000.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:         Steven K. Sanders
                               Albuquerque, New Mexico

Counsel for Defendants:        Mary T. Torres
                               Modrall, Sperling, Roehl, Harris & Sisk
                               Las Cruces, New Mexico